**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

MARY F. HENDERSON,

        Plaintiff,

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

No. C15-0081-CJW

**MEMORANDUM OPINION AND**
**ORDER**

---

I.   INTRODUCTION ................................................................. 2

II.   BACKGROUND ................................................................. 2

III.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF ................................................................. 3

IV.   THE ALJ'S FINDINGS ................................................. 7

    A.   Treatment notes by Dr. Vernon ................................. 9

    B.   Physical Medical Source Statement by Dr. Vernon ......... 11

    C.   Mental Medical Source Statement by Dr. Vernon ............ 11

V.   SUPPLEMENTAL EVIDENCE SUBMITTED ON APPEAL ................... 21

    A.   Exhibit 24E: Representative correspondence dated April 22, 2014 ................................................................. 21

    B.   Exhibit 25E: Representative brief dated November 24, 2012 ............ 21

    C.   Exhibit 26E: Pictures of the claimant's hands and arms faxed on November 25, 2014 ................................. 22

VI.   **THE SUBSTANTIAL EVIDENCE STANDARD**............................... 22

VII.  **DISCUSSION**............................................................. 23

    A.   *Plaintiff's brief (Doc. 13)*........................................ 24

        1. *Claimant's hands*........................................ 24

        2. *Claimant's mental limitations*........................ 29

    B.   *Representative Brief Dated November 24, 2012 (Exhibit 25)*
       *Submitted As Supplemental Evidence on Appeal*........................ 37

VIII. **CONCLUSION**............................................................. 40

## I.   INTRODUCTION

Plaintiff, Mary Henderson (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying claimant's application for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 405(g), 423, 1383(c)(3). Plaintiff contends the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision. For the reasons that follow, the court affirms the Commissioner's decision.

## II.   BACKGROUND

Claimant was born in 1959, has completed high school and one year of college, and has past work as nurse's aide, cook, custodian, and medication technician. AR 27 & 82. Claimant filed applications for DIB and SSI on June 1, 2012, alleging a disability onset date of May 31, 2012. AR 13. She contends she is disabled due to the following impairments: diabetes mellitus; osteoarthritis; depressive disorder; peripheral

2

neuropathy; right shoulder strain with tendinitis; and quadruple bypass. AR 16 & 91. Her claims were denied on September 17, 2012, and again on reconsideration on November 5, 2012. AR 13.

Claimant then requested a hearing before an Administrative Law Judge (ALJ) on November 21, 2012. AR 13. ALJ Jo Ann L. Draper conducted a hearing on December 19, 2013, at which claimant, claimant's attorney, Danny L. Cornell, and vocational expert, Julie A. Svec, testified. AR 13 & 36–88. On February 24, 2014, the ALJ issued a decision denying claimant's claims. AR 10–29. On April 22, 2014, claimant sought review from the Appeals Council, which denied her request on June 26, 2015. AR 1–4 & 7. The ALJ's decision, thus, became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

Claimant filed a complaint (Doc. 3) in this court on August 26, 2015, seeking review of the ALJ's decision. With the consent of the parties, the Honorable Linda R. Reade transferred this case to a United States magistrate judge for final disposition and entry of judgment (Doc. 7—signed by the court on November 13, 2015, and filed on the docket on November 16, 2015). The parties have briefed the issues and the matter is now fully submitted.

## III.  *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(a); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include: "(1) physical functions such as walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. If the claimant can still do her past relevant work, then she is considered not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based on all relevant medical and other evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to

determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(f), 416.912(f), 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

Also an ALJ must consider claimant's obesity when evaluating his or her disability. SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002). For adult men and women, obesity is defined as having a Body Mass Index (BMI) of 30 or over. *Id.* Generally a physician's opinion will establish obesity. *Id.* A claimant is considered obese "as long as his or her weight or BMI shows essentially a consistent pattern of obesity." *Id.* For an adult claimant, the ALJ is instructed to consider obesity at the following stages of the sequential evaluation process: whether the claimant has medically determinable impairments; if any of the impairments are severe; if any of claimant's severe impairments are disabling impairments listed in the regulations; and if claimant's

impairments allow him or her to do past relevant work or work that exists in the national economy in significant numbers. *Id.*

## IV.    THE ALJ'S FINDINGS

The ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since May 31, 2012, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: diabetes mellitus; osteoarthritis; depressive disorder; peripheral neuropathy; right shoulder strain with tendinitis. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    The claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except lifting and carrying 10 pounds occasionally and 5 pounds frequently. The claimant could stand and walk two hours out of an eight hour workday. The individual is capable of sitting up to six hours per day. The claimant could only occasionally climb, balance, stoop, and kneel. The claimant could never crawl. The claimant could only occasionally reach overhead with the upper right extremity. The claimant is right hand dominant. The claimant should avoid constant handling and fingering bilaterally, but is capable of frequent handling and fingering. The individual should never climb ropes, ladders or scaffolds. The claimant is precluded

from highly detailed and highly complex tasks, but can understand, remember and carry out 3-4 SVP tasks.

6.     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.     The claimant was born on November 24, 1959, and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.     The claimant has acquired work skills from past relevant work (20 C.F.R. §§ 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2012, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

AR 15–28.  To render her decision regarding claimant's RFC, the ALJ stated that she considered the findings of the "State Agency medical physicians and other consultants. The opinions are weighed as statements from non-examining sources.[1]  Based on the

---

[1] The court notes that State agency consultant Dr. Stientjes, a licensed psychologist, was actually an examining source who performed a consultative examination on claimant.  AR 616.  Thus, Dr. Stientjes is a nontreating source, and not a non-examining source.  *See infra* note 5.  The ALJ gave Dr. Stientjes' opinion great weight.  AR 22.  Also, in the government's brief, defendant argues that Dr. Stientjes be classified as a "state-agency disability examiner" and not a "state-agency expert."  *See* Doc. 14, at 14.

evidence, the [ALJ] concludes the State Agency adequately considered the evidence of record and great weight is given to the opinions." AR 26. The ALJ gave the opinion of Dr. Charles Vernon, claimant's long-standing source, little weight. AR 24. The ALJ gave little or no weight to the statements made by claimant's husband, Greg Henderson, nor did the ALJ mention the letter from claimant's niece. *See* AR 18 & 13–29. Below, the court summarizes the evidence cited in the ALJ's decision and all other evidence on the record.

Dr. Charles B. Vernon, MD

Dr. Vernon is a family practitioner at Anamosa Family Practice. AR 501–601. Dr. Vernon has been claimant's treating source since the mid-1990s. AR 43.[2] The record contains: Dr. Vernon's treatment notes dated from March 3, 2010, to October 12, 2012 (AR 501–607 & 627–35); claimant's visit on October 15, 2012, for the purpose of reviewing disability forms (AR 623–26); "Physical Medical Source Statement" dated October 15, 2012, completed by Dr. Vernon (AR 636–39); and a "Mental Medical Source Statement" dated October 15, 2012, completed by Dr. Vernon (AR 640–45).

### A. *Treatment notes by Dr. Vernon*

On May 15, 2015, Dr. Vernon wrote in his treatment notes that claimant "was wondering about applying for disability. She certainly has sufficient medical problems as well as discomfort when she attempts to work such that it would be reasonable to inquire about disability determination. She will think about this, and she may choose to go ahead with disability evaluation." AR 513.

---

[2] These are some slight factual inconsistencies in the record. Claimant testifies Dr. Vernon has been her treating doctor since mid-1990s (AR 43). On the other hand, Dr. Vernon testifies that he has been her treating doctor since the mid-1980s (AR 640). Nonetheless, it is abundantly clear from the evidence on the record that Dr. Vernon is claimant's long-time treating source.

On October 12, 2012, Dr. Vernon saw claimant for the last routine follow-up visit on the record. AR 627. From this visit, Dr. Vernon's treatment notes list claimant's *active problems* as the following:

> Alcohol Use Weekends; Arthritis, possible psoriatic; Asthma; Backache; Coronary Artery Disease; Depression; Esophageal Reflux; Fatigue; Fatty Liver; Gout Of The Right Knee; Headache; Heberden's Nodes (Painless Nodules DIP); Hyperlipidemia; Hypertension; Microalbuminuria; Muscle Cramps In The Calf; Obesity; Osteoarthritis Of The Hand, Bilateral; Osteoarthritis Of The Knee, Bilateral; Paronychia Of The Right Second Toe, lateral distal margin; Plantar Fasciitis; Psoriasis; Restless Leg Syndrome; Rotator Cuff Tendonitis; Serum Enzyme Levels-ALT Elevated; Serum Enzyme Levels-AST Elevated; Shoulder Injury, right; Type 2 Diabetes Mellitus; Urinary Tract Infection; Vertigo; and Vitamin D Deficiency.

AR 627–28. Furthermore, Dr. Vernon's same treatment notes from October 12, 2012, list claimant's *current medications* as the following:

> Fish Oil 1000 mg; Calcium 600+D 600-200 mg; 10 units of insulin QD; Vitamin C 2000 mg; CVS Aspirin EC 325 mg; Magnesium 500 mg; LORazepam 1 mg [for anxiety and insomnia]; Fenofibrate Micronized 200 mg; Atenolol 25 mg; Enalapril Maleate 10 mg; MetFORMIN HCl 500 mg; Allopurinol 100 mg; Citalopram Hydrobromide 20 mg; Meloxicam 15 mg; Vitamin D 2000 UNIT; Hydrocodone-Acetaminophen 7.5-500 mg [for pain]; Omeprazole 20 mg; Levemir 100 ml; and Pravastatin Sodium 10 mg.[3]

---

[3] The court notes the treatment purposes of the following medications. Fenofibrate Micronized is a cholesterol drug. *See generally Abbott Labs. v. Novopharm Ltd.*, 323 F.3d 1324 (Fed. Cir. 2003). Atenolol is used to treat hypertension. *See Imperial Chem. Indus., PLC v. Danbury Pharmacal, Inc.*, 777 F. Supp. 330, 369 (D. Del. 1991). Formulations of enalapril treat high blood pressure. *See Apotex USA, Inc. v. Merck & Co.*, 254 F.3d 1031, 1033-40 (Fed. Cir. 2001). Metformin HCI controls type II diabetes patients' blood sugar levels. *See Depomed, Inc. v. Ivax Corp.*, 532 F. Supp. 2d 1170, 1175 (N.D. Cal. 2007). Allopurinol treats gout. *See Malbrough v. Colvin*, No. 2:12-CV-00958, 2013 WL 3716609, at *2–3 (W.D. La. July 15, 2013). Citalopram Hydrobromide is used to treat depression. *See Arrington v. Colvin*, No. 4:13-CV-00011, 2014 WL 2586237, at *4 n.5 (W.D. Va. June 10, 2014). Meloxicam treats

AR 627.  Lastly, on October 14, 2013, Dr. Vernon saw claimant for a follow-up of her anemia, and relatedly he saw claimant on November 13, 2013, for her continued "rectal bleeding."  *See* AR 724–36.  Claimant was taking Colace at 100 mg bid to control rectal bleeding and stool softeners.  AR 734.  On November 13, 2013, claimant reported being in "not acute distress."  AR 735.  Dr. Vernon's treatment notes from November 13, 2013, state: "[w]e will see how soon we can get her into a surgeon so that they can see this inflammatory [hemorrhoidal] mass as well."  AR 736.

### B.  *Physical Medical Source Statement by Dr. Vernon*

This statement is dated October 15, 2012.  Dr. Vernon lists claimant's symptoms as including: "fatigue, difficulty walking, excessive thirst, swelling of joints, psychological problems-depression, vascular disease/leg cramping, extremity pain and numbness, loss of manual dexterity, difficulty thinking/concentrating, hypoglycemic attacks."  AR 636.  Dr. Vernon writes that claimant's impairments have lasted or will last for at least 12 months, that claimant cannot even tolerate "low-stress" work, and that claimant would miss at least 4 days a month or more from any full-time job due to her impairments.  AR 636–37.

### C.  *Mental Medical Source Statement by Dr. Vernon*

This statement is dated October 15, 2012.  Dr. Vernon writes that he has been treating claimant for "multiple visits per year" since the "mid 1980s."  AR 640.  In response to a question about the clinical findings that demonstrate the severity of

---

pain.  *See Treadway v. Colvin*, No. 4:14-CV-1957 (CEJ), 2016 WL 916385, at *11 (E.D. Mo. Mar. 7, 2016).  Omeprazole treats acid reflux.  *See Atkins v. Bradford*, No. 2:12-CV-331, 2014 WL 549325, at *5 (S.D. Tex. Feb. 11, 2014).  Levemir is a "long-acting insulin."  *See Bridgeford v. Namiely*, No. CIV.A. PJM-13-495, 2014 WL 198406, at *4–5 (D. Md. Jan. 14, 2014).  Pravastatin sodium is used to lower cholesterol.  *See Alexander v. Kukua*, No. CA C-10-325, 2011 WL 3489837, at *2 (S.D. Tex. July 26, 2011), *report and recommendation adopted*, No. CIV.A. C-10-325, 2011 WL 3477133 (S.D. Tex. Aug. 9, 2011).

claimant's mental problems, Dr. Vernon writes "she is chronically anxious, tearful, unable to focus, perseveration, flight of ideas." AR 640. Dr. Vernon also writes that claimant is in "[t]oo much pain. . . . She is unable to make decisions, unable to concentrate. This is due to pain as well as distraction due to symptoms of her medical illness . . . . Depression make [sic] chronic pain worse and interferes with her ability to manage diabetes, hypertension and other medical problems optimally." AR 640–41.

Overall, the ALJ found that Dr. Vernon's statements that claimant is disabled "do not constitute a sufficient basis for a finding of disability within the meaning of the Social Security Act . . . . Opinion evidence from Dr. Vernon encroaches on an area reserved to the Commissioner and is beyond the scope of these assessments of physical and mental impairments [completed by Dr. Vernon]." AR 23. The ALJ found the remainder of Dr. Vernon's statements were based largely on claimant's subjective complaints of pain and were contradicted by claimant's self-reported activities and other medical reports on the record. AR 23–24. The ALJ determined that Dr. Vernon's opinion deserved little weight. AR 24.

Harlan J. Stientjes, PhD

Dr. Stientjes is a State agency consultant and a licensed psychologist.[4] Dr. Stientjes examined claimant on September 11, 2012, and completed a "Psychological Evaluation." AR 616. Dr. Stientjes is classified as a nontreating source.[5] Dr. Stientjes

---

[4] Licensed psychologists are "acceptable medical sources." *See* 20 §§ C.F.R. 404.1513(a)(2), 416.913(a)(2).

[5] A *nontreating source* is defined as "a physician, psychologist, or other acceptable medical source who has examined you [the claimant] but does not have, or did not have, an ongoing treatment relationship with you. The term includes an acceptable medical source who is a consultative examiner for us [Social Security Administration], when the consultative examiner is not your treating source." *See* 20 §§ C.F.R. 404.1502, 416.902.

administered the Beck Depression Inventory (BDI) on claimant. *See Smith v. Colvin*, No. 2:15-CV-02031-MEF, 2016 WL 1048062, at *4 (W.D. Ark. Mar. 11, 2016) (stating that "[t]he Beck Depression Inventory is well recognized around the world, and has been found to be a highly reliable instrument for the detection of depression."). Dr. Stientjes described claimant as arriving fifteen minutes early for her appointment, with "excellent hygiene," psoriasis covering both arms, having a "slight hesitation/stiffness" when walking, maintaining eye contact, and being both responsive and cooperative. AR 617. Under the BDI, Dr. Stientjes found claimant "endorsed severe feelings of being punished and loss of interest in sex, moderate feelings of guilt and disappointment in herself, loss of interest, and difficulty concentrating." AR 617. Also, Dr. Stientjes found that claimant had "mild" depressive symptoms and further stated that "[claimant] said she isn't brave enough to take her own life and feels she would be cheating her grandchildren. She [claimant] denied aggressive tendencies, specific phobias, obsessions, compulsions, paranoia, delusions, and perceptual disturbances." AR 617. Also, Dr. Stientjes noted that claimant had normal verbal expression, reported that she walks on a treadmill for ten minutes at a time and uses stretch bands, can manage her finances independently, would have pleasant interactions with supervisors and coworkers, has typical safety judgment, will not have difficulty in responding to change, and has a Global Assessment of Functioning (GAF) Scale score of 62. AR 617–18.[6] Overall, Dr. Stientjes concluded

---

[6] A GAF score of 62 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships." *Schwartz v. Colvin*, No. 3:12-CV-01070, 2014 WL 257846, at *5 (M.D. Pa. Jan. 23, 2014) (citing *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994)). The trend noted by the Court of Appeals for the Eighth Circuit is that GAF scores only have "limited importance." *Pate-Fires v. Astrue*, 564 F.3d 935, 937–38 n.1–3 (8th Cir. 2009); *see also Nowling v. Colvin*, 813 F.3d 1110, 1115 n.3 (citing *Jones v. Astrue,* 619 F.3d 963, 973–74 (8th Cir. 2010) ("Moreover, the Commissioner has declined to endorse the [GAF] score for use in the Social Security and [Supplemental Security Income] disability programs and has

that claimant is "severely depressed and is appropriately treated for that disorder as well as Type II diabetes and other physical disorders. Prospects for return to full-time employment are poor despite necessary cognitive capacities." AR 618.

The ALJ found that "[t]he opinions of the psychologist [Harlan J. Stientjes, PhD] are considered as those from an examining, non-treating medical source. Because the findings were based on objective findings and appeared consistent with the claimant's longitudinal medical history, the undersigned has given the opinions significant weight." AR 22.

Dr. John Tedesco, PhD

Dr. Tedesco is a non-examining State agency consultant. Dr. Tedesco's opinion is dated September 17, 2012. AR 100. In regard to Dr. Stientjes' opinion described above, Dr. Tedesco writes:

> The claimant attends a Psychological CE [consultative examination] on 9/11/2012. Claimant was noted at CE to be oriented x3, her intellectual ability was presumed to be average. Claimant required some repetition of instructions. CE provider [examining source (ES) Dr. Stientjes] noted that the claimant was severely depressed, but appropriately treated for that disorder. He indicated that she did have some difficulty with understanding and remembering, but could remember simple to mildly complex oral and written instructions. He estimated her GAF at 62. The ES source also gave opinion that the claimant had the cognitive capacities for full-time employment, but *prospects for return to work were poor*. Evidently, he was referring to her physical disorders preventing work in this statement. This would be consistent with her ADL forms reporting restrictions due to her physical condition and pain, but also noting some problems with concentration. Claimant indicates ability to complete full activities of living, but reports limits in time an activity can be performed due to pain. Pain has also restricted her from work activities, personal activities and hobbies she enjoyed, which in turn impacts her depressive

---

indicated that [GAF] scores have no direct correlation to the severity requirements of the mental disorders listings.")).

symptoms. The ES opinion is given great weight, as it is consistent with the other medical and ADL information in file as well as the claimant's allegations. From a mental standpoint, she is capable of sustaining a 40-hour work week. She may have some difficulty with concentration on more complex tasks due to her depressive symptoms. The claimant maintains the cognitive abilities to work at occupations that are simple to mildly complex on a sustained basis.

AR 113 (emphasis added). Dr. Tedesco found claimant's symptom statements were partially credible. AR 96. Furthermore, Dr. Tedesco found that claimant could: occasionally lift/or carry 20 pounds, frequently lift/or carry 10 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, push/or pull unlimited except for limitations mentioned above on lift and/or carry abilities. AR 96–97. Also, claimant can occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, never crawl, has limited right overhead reach, unlimited handling (gross manipulation), unlimited fingering (fine manipulation), and unlimited feeling (skin receptors). AR 97–98.

Dr. Dennis Weis, MD

Dr. Weis is a non-examining State agency consultant. Dr. Weis' opinion dated August 21, 2012, precedes Dr. Stientjes' opinion. Dr. Weis finds that although claimant alleges that she cannot lift a gallon of milk nor sit/stand for prolonged periods of time, she "does not quantitate this." AR 98. Furthermore, claimant "remains capable of full self-care needs, prepare[s] some meals and perform[s] some light households tasks. She also continues to drive a car, shops and runs some errands." *Id.* Claimant has "good use and strength in [her] arms and legs." AR 102. Dr. Weis finds claimant has diabetes mellitus but no evidence on the record supports her "allegations of neuropathy nor is there evidence of organ system involvement or management complications requiring

intensive intervention." AR 98. Despite claimants past heart surgery, claimant experiences no heart failure at this time. AR 102. Clinic notes on the record do not support a finding that claimant has severe arthritis. *Id.* In regard to claimant's credibility, Dr. Weis concludes that claimant's "credibility is eroded to a degree due to lack of evidence supporting impairment related to some of her allegations which are discussed above." AR 98. Overall, Dr. Weis finds that claimant is "capable of performing simple, routine types of work that is less strenuous in nature and does not require frequent overhead reaching with [her] right arm." AR 102.

Dr. John May, MD

Dr. John May is a non-examining, State agency consultant. Dr. May's opinion is dated November 5, 2012. AR 143. Dr. May's opinion is for reconsideration of claimant's applications. AR 143. On reconsideration, Dr. May affirms the initial finding on August 21, 2012, by stating:

> The clmt [claimant] alleges a worsening of her medical condition due to having more pain in hands, fingers and hip. She stated that she is able to do less physical activity as of 7-12. Updates in file shows that her diabetes is under better control. There is no mention in the 10-12 office notes that the clmt has ongoing pain and limitation due to significant pain. TSS statement sent in by the clmt's treating doctor [Dr. Vernon] shows that she is unable to stand more then 15-20 minutes due to pain. She is unable to walk more then [sic] a block without having to rest. She is also noted to be unable to sit longer then [sic] 15 minutes. Updates in clmt ADLs and pain report in file shows that the clmt is able to perform ADLs with similar restrictions as at the initial level. Again there is no evidence in file to support the clmt's allegations of significant restrictions due to arthritis etc. At this time the TSS would be given little weight as it is not supported by the medical evidence in file. At this time the prior determination dated 8-21-12 would be affirmed as written.

AR 143.  Lastly, Dr. May concluded that claimant shows no signs of muscle wasting or severe nerve damage, has limitations and needs to avoid strenuous activities, and is capable of performing "simple, routine types of work that is less strenuous in nature and does not require frequent overhead reaching with [her] right arm."  AR 147.

Scott Shafer, PhD

Dr. Scott Shafer, PhD, is a non-examining, State agency consultant.  Dr. Shafer's opinions are dated October 31, 2012, and November 2, 2012.  AR 140 & 145.  On reconsideration, Dr. Shafer affirms the initial finding from September 17, 2012, and states:

> On reconsideration the clmt [claimant] does not allege any worsening of her mental condition. Notes from the clmt's family doctor indicates that she is still being treated for depression at this time.  Mental Medical Source Statement sent in by the clmt's family doctor shows that she is unable to meet competitive standards and seriously limited in several areas.  However, medical records and employment history do not support such limitations.  She worked until about 5 months ago and record does not reflect a deteioration [sic] in her condition.  ADLs in file remain the same as the initial level for function.   At this time the TSS would be given little weight.  Therefore, the prior determination dated 9-17-12 would be affirmed as written.

AR 145.

Dr. Michael S. Chandra, MD

There were no medical records from Dr. Chandra, employed by St. Luke's Hospital in Cedar Rapids, "for the dates requested" to document claimant's DIB and SSI claims.  AR 608.

Dr. James M. LeVett, MD

There were no medical records from Dr. LeVett "for the dates requested" to document claimant's DIB and SSI claims.  AR 500.  Dr. LeVett has not seen claimant

from "2010 to present [June 28, 2012—the date the record invoice was signed]." AR 500.

<u>Greg Henderson</u>

Greg S. Henderson is claimant's husband. AR 274. He resides with claimant. AR 274. Mr. Henderson completed a Third Party Function Report on June 29, 2012. *See* AR 274–81. In this report, Mr. Henderson writes that he spends every hour with claimant, except for 20 hours a week. AR 274. Mr. Henderson also writes that he helps the claimant take baths, but she can shower without his help. AR 275. Mr. Henderson writes that: he takes care of their two dogs; he reminds claimant to take her pain medication; claimant prepares food "except complete meals with several courses of which I [Mr. Henderson] help;" claimant does sweeping and dusting for about "30-60 minutes daily;" claimant goes grocery shopping for two hours weekly with help; claimant is able to handle her finances independently; claimant makes jewelry daily but "limits time spent on making jewelry;" claimant uses the phone daily to socially interact with others but she does not go anywhere for social interaction on a regular basis; claimant no longer camps, fishes, or plays outside with grandchildren; claimant is depressed as she is "unable to do things that she used to do;" claimant can walk for 20 minutes without stopping and resting; claimant tries to walk twice daily but "sometimes she can't do this;" claimant's insulin disrupts her sleep cycle and makes her nauseous." AR 276–81.

At the hearing, Mr. Henderson submitted additional testimony dated December 19, 2013, which is approximately 18 months after the Third Party Function Report described above. AR 379. In this handwritten statement from Mr. Henderson, he writes that: claimant's conditions have significantly worsened; she needs to be under supervision when she watches her grandchildren; and when he is away at his nearby part-time job

twice a week claimant calls him, four to five times a day, crying due to her depression. AR 379.

The ALJ gave Greg Henderson's cumulative testimony little or no weight. The ALJ found that Mr. Henderson lacks medical training, is an interested third party witness, and his statements from December 19, 2013, are irrelevant to the pertinent time frame at issue. AR 18.

Holly Methaly

Holly Methaly[7] is claimant's niece. Ms. Methaly submitted a letter signed on December 5, 2013. *See* AR 377–78. In the letter, Ms. Methaly writes: "I really started noticing the changes at work . . . . Things she had normally been able to do were causing more and more pain getting hard to do . . . when her hands were having a bad day it was nearly impossible." AR 377. Ms. Methaly also writes "[i]f I could just make her [claimant] happy. It's sad for her to need so much." AR 378. The ALJ did not cite Ms. Methaly's letter in her decision. *See* AR 13–29.

UPH Jones Regional-Anamosa

Jonas S. Swan, DO[8] treated claimant on April 7, 2013, at UPH Jones Regional in the Emergency Department for headache and neck pain. AR 694. She was discharged in stable condition. AR 694. On October 1, 2013, claimant returned to UPH Jones for "nausea/bloating/anemia" where she was treated by Andrew Nowell, MD. AR 695. Dr. Nowell writes:

> Patient with multiple medical issues including arthritis on chronic NSAID use. Over past 3-4 months, has had complaint of non-specific abdominal

---

[7] Claimant refers to her niece as Holly Bailey. AR 47. The letter was signed by Holly Bailey on December 5, 2013. On the other hand, ALJ referred to Holly Methaly at the hearing. AR 79.

[8] DO stands for Doctor of Osteopathic Medicine. A DO is an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1).

discomfort, nausea, bloating and intermittent diarrhea. States symptoms
are similar to "when I had my gallbladder taken out." Occasional emesis,
but denies issues with actual eating. She has not lost any weight over past
few months. Recently seen by PCP, PPI therapy doubled. Other workup
included CBC which showed microcytic anemia. She has never had
colonoscopy previously. Reports some chronic blood per rectum which she
thinks secondary to hemorrhoids.

AR 695. On October 13, 2013, claimant underwent a colonoscopy screening, endo-esophagogastroduodenoscopy, and biopsy. AR 698. The findings post-surgical procedure were "2 focal areas mild gastritis, mild pandiverticulosis [sic] of colon, external hemorrhoids." AR 698. On November 14, 2013, Kevin R. Kopesky, MD, concluded that "[i]mpressions: bleeding with possible Internal hemorrhoids[.] There are no active problems to display for this patient." AR 703. Lastly, UPH Jones Regional's medical records reflect that Dr. Vernon requested testing from "Lab In Sunquest Edi" on September 20, 2013 (AR 703) and December 2, 2013 (AR 717). *See* AR 703–23. The record also reflects documentation from Unity Point Health Community Network of claimant's testing order by Dr. Vernon and performed by UPH Jones. *See* AR 737–42.

Medical information provided by claimant

Claimant self-supplied the record with Exhibits 19E, 1F, 10F, 11F, 12F, 14F, 16F, 17F, 18F. Exhibit 19E consists of a calendar covering: March 2013, July 2013, September 2013, and October 2013. AR 363–66. Claimant handwrote a daily entry for each calendar day covered (*e.g.*, "Good day[,] fingers sore/headache" or "Awake most of night[,] leg pain/knees"). AR 363–64. Exhibits 10F, 11F, 12F,14F, 16F, 17F, and 18F also display monthly calendars where claimant wrote down her symptoms/feelings for each day (respectively the months covered include: October, November, December of 2012 and January, April, May, and June of 2013). AR 646–48, 659, 663–65. Exhibit 1F consists of 103 pages (AR 397–499) and contains various medical reports from

Allscripts (dated March 2012 and June 2012), Anamosa Family Practice's medical records signed by Dr. Vernon (dated November 2006 to June 2012), and St. Luke's Hospital in Cedar Rapids (dated June 2010 and December 2006). AR 397–499.

## V.    SUPPLEMENTAL EVIDENCE SUBMITTED ON APPEAL

Claimant attached three post-hearing exhibits to her appeal (Exhibits 24E, 25E & 26E). This supplemental evidence is described below.

### A. Exhibit 24E: Representative correspondence dated April 22, 2014

A letter dated on April 22, 2014, from Danny L. Cornell, claimant's counsel, to the Appeals Council appealing the ALJ's notice of unfavorable decision. AR 381. Mr. Cornell asks the Appeals Council for an extension "of 60 days after her [claimant's] receipt of the recording to submit additional evidence and/or arguments." AR 381. Also, Mr. Cornell argues that the ALJ's decision was unsupported by substantial evidence, in noncompliance with both relevant regulations and Social Security Reports, and in violation of Eighth Circuit Court of Appeals' case law. AR 382.

### B. Exhibit 25E: Representative brief dated November 24, 2012

A letter dated on November 24, 2014, from Mr. Cornell addressed to Ms. Sherika Bryant, Legal Assistant of the Appeals Council. *See* AR 383–90. The letter contains a non-exhaustive list of arguments alleging that the ALJ's decision contains errors, contradicts the substantial evidence on the record, and should be reversed. AR 390. The letter cites to several portions of the record. *See* AR 383–90.

### C. Exhibit 26E: Pictures of the claimant's hands and arms faxed on November 25, 2014

Claimant submitted a photograph of her right thumb (AR 391), left hand (AR 392), left hand with the caption "middle finger locks down-very painful" (AR 393), and psoriasis on her arm with the caption "arm-psoriasis caused by arthritis" (AR 394–96).

## VI. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining

whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (internal citation omitted) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## VII.   DISCUSSION

Ultimately, the court finds the ALJ did not legally err and her decision was supported by substantial evidence on the record as a whole. The court now turns to address claimant's specific objections about the ALJ's decision. Namely, the claimant has authored two argumentative documents. The first document is plaintiff's brief (Doc.

13) and the second document is the Representative brief dated November 24, 2012 (submitted as Exhibit 25E on appeal). The court will address both documents below.

## A.    Plaintiff's brief (Doc. 13)

Claimant raises two arguments in her brief. These arguments center on claimant's hands (her osteoarthritis in her fingers) and claimant's mental limitations (whether she can perform semi-skilled or unskilled work). Specifically, claimant argues that: (1) the ALJ erred in determining claimant's RFC included "frequent" handling and fingering when the record only supports a finding of "occasional" handling and fingering under which the ALJ would have found claimant was disabled; and (2) the ALJ erred in determining that claimant could perform "semi-skilled" work when the record only supports a finding of "unskilled" work under which the ALJ would have found claimant was disabled. Doc. 13.

### 1.  Claimant's hands

In regard to her hands, claimant argues that "[t]he ALJ's Residual Functional Capacity Assessment is Flawed as the ALJ Failed to Evaluate Properly [Her] Subjective Complaints Regarding Her Ability to Handle and Finger." Doc. 13, at 9. Claimant further argues that "[t]he vocational expert testified that if the claimant could reach and handle on only an occasional basis, she could not perform past work or any other work. (A.R. 86) . . . . Had the ALJ credited [her] allegations and limited the claimant to occasional handling and fingering, the ALJ would have found her disabled." Doc. 13, at 6 & 10.[9] Claimant cites to the *Polaski* factors and to the Eighth Circuit Court of

---

[9] Claimant is correct. If the ALJ had determined that claimant could only finger and handle bilaterally occasionally instead of frequently, then according to the VE's testimony, there would be no jobs in the national economy for claimant and she would have been found disabled. AR 85–86.

Appeals' cases of *Gonzales v. Barnhart* (2006) and *Ford v. Astrue* (2008) for the proposition that an ALJ may discount a claimant's subjective complaints of pain given inconsistencies in the record, but the ALJ must detail reasons for discrediting such complaints and point out the inconsistencies relied on. Doc. 13, at 9; *see Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) and *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). Claimant also cites treatment notes from Dr. Vernon and testimony from her husband to further support her allegations of pain in her hands. Doc. 13, at 12–13. Lastly, claimant argues that the ALJ improperly relied on claimant's testimony about her daily activities (*e.g.*, claimant testified to sewing and making jewelry) when in fact claimant testified that she only performed such daily activities for "how long I can do these things." Doc. 13, at 14 (citing AR 298).

The court finds that substantial evidence supports the ALJ finding that claimant was less than fully credible. Thus, the ALJ made a correct credibility determination in regard to claimant's subjective pain complaints about her hands. The court finds the ALJ correctly considered the relevant *Polaski* factors in determining claimant's credibility. Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) claimant's daily activities; (2) duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). In *Lowe*, the Eighth Circuit Court of Appeals stated, "[t]he ALJ was not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility,

then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel,* 241 F.3d 1033, 1038 (8th Cir. 2001).

Also "[a]lthough the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." *Id.* "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted). In evaluating a claimant's subjective complaints of pain, an ALJ may rely on a combination of her/his personal observations and a review of the record to reject such complaints. *Lamp v. Astrue,* 531 F.3d 629, 632 (8th Cir. 2008) ("While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors."). However, the ALJ may not solely rely on his personal observations to reject such claims. *Id.* Thus "[s]ubjective complaints can be discounted [by the ALJ], however, where inconsistencies appear in the record as a whole." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (citing *Polaski*). In sum, "[t]he Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).

The ALJ determined claimant's RFC included the following relevant limitations in regard to claimant's hands:

> The claimant could only occasionally reach overhead with the upper right extremity. The claimant is right hand dominant. The claimant should avoid

> *constant* handling and fingering bilaterally, but is capable of *frequent* handling and fingering.

AR 17 (emphasis added). In this context, *frequent* means a condition or an activity that "exists between one-third and two-thirds of the time [in an occupation]," while *constant* means a condition or an activity that "exists two-thirds or more of the time in an occupation." *Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) (citing *2 Dictionary of Occupational Titles*, app. C, at 1013 (4th ed. 1991)). Overall, the ALJ found that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant experiences some symptoms and limitations; however, the record does not fully support the severity of the claimant's allegations.

AR 26.

Commissioner argues there is substantial evidence to support the ALJ's decision to not add greater restrictions in the RFC assessment given claimant's osteoarthritic fingers. Doc. 14, at 6. Commissioner admits that "[a]lthough the ALJ did not offer significant elaboration about inconsistencies between her manipulative complaints[10] and the objective medical evidence in the paragraph focused on credibility, in her earlier discussion, her reasoning [sic] pellucid." *Id.*, at 8.

Here the court agrees with the Commissioner. In the ALJ's decision, the ALJ pointed to the record that claimant: dusted and swept, made daily simple meals, could drive, sewed, made bracelets, painted and drew, sometimes did dishes. AR 17–18. The

---

[10] The court understands "manipulative complaints" to refer to claimant's complaints about her inability to fully manipulate or move her fingers due to her osteoarthritis.

ALJ gave little weight to the testimony of claimant's husband, Greg Henderson, as she found him to be not medically trained and an interested third party witness. AR 19. The ALJ pointed to Dr. Vernon's treatment notes that on April 27, 2011, claimant had Heberden's nodes[11] present on her fingers. AR 19 (citing AR 628—where Dr. Vernon lists claimant's active problems as "painless" Heberden's nodes on the DIP joints). Also, the ALJ noted that claimant said she had to hold a cup of coffee with both hands due to her arthritis. AR 19.

Upon a thorough examination of the record, the court finds that the record does support the ALJ finding that claimant is able to frequently bilaterally handle and finger. On claimant's self-completed Function Report dated June 29, 2012, claimant writes that on a daily basis, she "dust[s], sweep[s] . . . fix my lunch . . . daily and weekly I may dust and sweep 30 to 60 minutes [,] dishes take me about ½ hr . . . my husband and I do the shopping together weekly 1 ½ hrs breaks in between stores . . . pays bills , count change, handle a saving account, use a checkbook/money orders . . . work on sewing and making bracelets a few minutes daily limit to how long I can do these things" AR 295–98. On claimant's self-completed Personal Pain/Fatigue Questionnaire dated June 29, 2012, claimant writes that she "may sweep floors do dusting, do my hobbies like sewing/painting drawing depending on hand and finger pains . . . taking care of my small grandchildren." AR 305. On claimant's self-completed Function Report-Adult dated October 13, 2012, she writes that she: ". . . try dusting, I vacume [sic] about 5 mins no carpet-wood floors . . . [cooks] hamb [sic] patties pre made chicken pre cut . . . I put laundry in washer if its by the washer, wash dishes (sit in chair or stool); sweep slowly

---

[11] Plaintiff's brief does an excellent job of explaining Heberden's nodes. *See* Doc. 13, at 13 n.4. In brief summary, Heberden's nodes are "bony bumps on the finger joint closest to the fingernail." *Virnig v. Colvin*, No. 13-CV-1539 PJS/TNL, 2014 WL 3864431, at *3 n.5 (D. Minn. Aug. 6, 2014). On appeal, claimant submitted photographs of her hands. AR 391–96.

vacume for 5 min . . . drive[s] a car." AR 322–24. At the hearing, claimant testified that her "fingers on [her] left hand have osteoarthritis in them." AR 61. On June 29, 2012, Dr. Vernon's treatment notes indicate that "[w]hile her joints are hurting [she told Dr. Vernon she was in pain] she does not have any acutely inflamed or swollen joints." AR 507. On October 14, 2013, Dr. Vernon's treatment notes read that claimant "has no acutely swollen or inflamed joints, but some chronic swelling and chronic discomfort." AR 727. On a visit to UPH Jones in relation to claimant's bleeding with defecation issue, Dr. Kevin R. Kopesky, MD, writes that claimant's "[m]usculoskeletal-no obvious deformity or swelling" on November 11, 2013. AR 702. Also, Dr. May writes: "[a]gain there is no evidence in file to support the clmt's allegations of significant restrictions due to arthritis etc. At this time [August 21, 2012] the [statements by Dr. Vernon describing claimant as only being able to stand and sit for 15-20 minutes due to pain] would be given little weight as it is not supported by the medical evidence in file. At this time the prior determination dated 8-21-12 would be affirmed as written." AR 143. Overall, the court finds this constitutes substantial evidence to support the ALJ's finding.

## 2. *Claimant's mental limitations*

Claimant alleges that the ALJ erred in finding that she could perform semi-skilled work as the record supports that she can only perform unskilled work. Doc. 13, at 14. Claimant further alleges, if the ALJ had properly found only a capacity for unskilled work then the ALJ would have found her disabled. Doc. 13, at 17. This error, argues claimant, made both the RFC assessment and the hypothetical question asked by the ALJ inaccurate. Doc. 13, at 14. Specifically, claimant states: "[t]he medical evidence consistently demonstrated [she] could handle only simple to mildly complex tasks. The ALJ, however, found [claimant] was able to perform jobs requiring up to 6 months to learn. This description of the claimant's mental abilities does not accurately reflect her

limitations." *Id.* In support of this argument, claimant alleges that the medical opinions from Dr. Stientjes, Dr. Vernon, Dr. Tedesco, and Dr. Shafer support that she can only perform unskilled work. Doc. 13, at 15.

The court finds that there is substantial evidence on the record to support the ALJ's determination that claimant is capable of semi-skilled work. In the RFC assessment, the ALJ determined that claimant "is precluded from highly detailed and highly complex tasks, but can understand, remember and carry out 3-4 SVP tasks." [12] AR 17.

Under the regulations of the Social Security Administration (SSA), *unskilled work* is the least complicated type of work and "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). Unskilled work "correspond[s] to a specific vocational preparation (SVP) level of one or two in the DOT [Dictionary of Occupational Titles]." *Hulsey*, 622 F.3d at 923 (citing SSR 00–4P, 2000 WL 1898704 (Dec. 4, 2000)). Further, "[t]he SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation." *Hulsey*, 622 F.3d at 923 (internal citation omitted). At SVP level three, an occupation mandates "preparation exceeding one month up to and including three months." *Berry v. Colvin*, 74 F. Supp. 3d 994, 999 n. 1 (N.D. Iowa 2015) (citing DOT). The SSA's regulations define *semi-skilled work* as follows,

---

[12] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00–4P, 2000 WL 1898704 (Dec. 4, 2000).

Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. §§ 404.1568(b), 416.968(b).

The court now reviews the evidence on the record. During the consultative examination, Dr. Stientjes determined that claimant "is capable of understanding and remembering simple to mildly complex oral and written instructions, but seems to require some repetition and is slower to pick up on tasks than would be anticipated. Carryover from day to day is believed to be very good. Interactions with coworkers and supervisors will be pleasant. Safety judgment is typical. Response to change will not be difficult." AR 618. Also, Dr. Tedesco found: "[f]rom a mental standpoint, she is capable of sustaining a 40-hour work week. She may have some difficulty with concentration on more complex tasks due to her depressive symptoms. The claimant maintains the cognitive abilities to work at occupations that are simple to mildly complex on a sustained basis." AR 113. Dr. Shafer found "[o]n reconsideration the clmt [claimant] does not allege any worsening of her mental condition. Notes from the clmt's family doctor indicates that she is still being treated for depression at this time. Mental Medical Source Statement sent in by the clmt's family doctor shows that she is unable to meet competitive standards and seriously limited in several areas. However, medical records and employment history do not support such limitations. She worked until about 5 months ago and record does not reflect a deteioration [sic] in her condition." AR 145.

At the hearing, the vocational expert testified that claimant acquired transferable skills at her past work as a nurse's aide and medication technician. AR 85. Namely, the skills of "documenting and following written directions or communications." AR 85. Specifically, at the hearing the ALJ asked the vocational expert if claimant has "acquired any skills that can be transferred to other jobs within the residual functional capacity?" AR 83–85. The vocational expert answered:

> Yes, there are basic skills acquired during the work as a nurse's aide and medication technician that I believe would transfer to jobs with an SVP-3 . . . [such as] documenting and following written directions or communications . . . [this would transfer to the jobs of] information aide . . . delivery pricer . . . circulation clerk.

AR 85. The ALJ mentioned these "acquired work skills from past relevant work" in her opinion. AR 27.

On the other hand, there is some evidence on the record that supports a finding of only unskilled work capacity. First, Dr. Weis deems claimant "capable of performing simple, routine types of work that is less strenuous in nature" and states her maximum capability is "unskilled light work with additional restrictions to avoid frequent reaching right upper extremity." AR 102 & 115. Also, Dr. May affirms Dr. Weis' opinion. AR 143. Furthermore, Dr. Vernon finds that claimant "can't concrete, [she is] unable to continue activity as a result . . . . She is unable to make decisions, unable to concentrate. This is due to pain as well as distraction due to symptoms of her medical illness." AR 640–41.

Despite Dr. Vernon's status as a treating source, the ALJ found the above statements from Dr. Vernon about claimant's inability to concentrate deserved little weight. A *treating source* is an acceptable medical source who has an ongoing treatment relationship providing medical treatment or evaluation to the claimant; however, such relationship may not exist solely to establish claimant's disability. 20 C.F.R. § 404.1502.

Under agency regulations, an *acceptable medical source* includes licensed physicians, either medical or osteopathic doctors. *Id.* § 404.1513(a). An ongoing treatment relationship is generally established when the medical evidence is consistent that the claimant has seen "the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* § 404.1502.[13] Dr. Vernon, MD (a licensed medical physician), is an acceptable medical source and the record also establishes that he is claimant's treating source. *See supra* note 2.

Generally, a treating source gets controlling weight. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal quotations and citation omitted) ("A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."). But, a treating source's opinion does "not automatically control, since the record must be evaluated as a whole." *Id.* (internal citation omitted). Furthermore, there is a category of opinions, even if authored by treating sources, which gets little controlling weight; namely, opinions by treating medical professionals stating that an applicant is "unable to work" or "disabled" do not count as medical opinions. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (citing *Stormo v. Barnhart,* 377 F.3d, 801, 806 (8th Cir. 2004)). An ALJ may give limited weight to a treating source's

---

[13] Under agency regulations, the ALJ evaluates and weighs a medical opinion by considering the following factors: (1) examining relationship (generally greater weight is given to a source who has examined the claimant; (2) length, nature, and extent of the treatment relationship; (3) supportability (the more relevant evidence that exists to support an opinion, then the more weight such opinion gets); (4) consistency (the more consistent that the opinion is with the record as a whole, then the more weight it is given); (5) specialization (great weight given to specialists in their medical areas of specialty); (6) other factors. *Id.* § 404.1527(c)(1)-(6). Generally, a treating source gets controlling weight if not contradicted by other substantial evidence on the record.

opinion if such opinion only provides conclusory statements or is inconsistent with the substantial evidence on the record. *Chamberlain v. Shalala*, 47 F.3d 1489, 1489–94 (8th Cir. 1995).

Here, the ALJ concluded about Dr. Vernon's opinion the following: a portion of Dr. Vernon's statements on the record were nonmedical statements that deserved little weight; and the remaining portion of Dr. Vernon's statements relied on claimant's subjective complaints and were inconsistent with claimant's reported activities, Dr. Vernon's own treatments, and other medical reports on record that again deserved little weight. AR 24. Specifically, the ALJ said that Dr. Vernon's statements finding claimant disabled were "[o]pinion evidence [that] encroaches on an area reserved to the Commissioner and is beyond the scope of these assessments of physical and mental impairments [completed by Dr. Vernon]." AR 23. The court agrees with ALJ's finding that these statements constituted nonmedical opinion evidence that deserve little weight. In regard to Dr. Vernon's medical statements, the ALJ also stated that she recognizes "a treating physician's obligation to his patient, a physician's desire to treat his patient in the most effective manner possible, and the necessity to accept the patient's symptomatic allegation of impairment as worthy of belief in order to appropriately treat the patient." AR 23. The ALJ found Dr. Vernon's statements about claimant's limitations, however, were contradicted by claimant's self-reported activities and other medical evidence on the record, and were based on claimant's subjective complaints. AR 24. *See Vandenboom v. Barnhart*, 421 F.3d 745, 749–50 (8th Cir. 2005) (upholding the ALJ's decision to deny controlling weight to the treating source's opinion where such opinion was "based largely on [claimant's] subjective complaints with little objective medical support" and relied on a medical report inconsistent with whole record.); *see also Renstrom*, 680 F.3d at 1064–65 (concluding ALJ's decision to give treating source non-controlling weight was reasonable as treating source based his findings "largely . . . on [claimant's] subjective

34

complaints" and his finding was inconsistent with other medical experts on the record who found claimant capable of light work). When a treating physician bases his opinion largely on claimant's subjective complaints, and there is substantial, contrary medical and other evidence on the record, the ALJ may reasonably give the treating physician's opinion non-controlling weight. Lastly, the ALJ noted "[a]lso inconsistent with [Dr. Vernon's] opinion, while noting significant mental health limitations, the doctor subsequently weaned the claimant off of her medications." AR 24. Upon reflection of the entire record, the court finds the ALJ giving Dr. Vernon non-controlling weight is reasonable and supported by substantial evidence on the record. Also, the court notes that Dr. Vernon mentioned to claimant, initially, that she ought to consider applying for disability benefits. *See* AR 513.[14]

Overall, it is not the court's role to reweigh the evidence; rather, the court must affirm the Commissioner's decision if substantial evidence on the record as a whole supports it. *See Lewis*, 353 F.3d at 645 ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."). The court finds that substantial evidence on the record as a whole supports the ALJ finding claimant capable of semi-skilled work. The ALJ gave the opinion of Dr.

---

[14] Again Dr. Vernon's treatment notes from May 15, 2015, state that "[claimant] was wondering about applying for disability. She certainly has sufficient medical problems as well as discomfort when she attempts to work such that it would be reasonable to inquire about disability determination. She will think about this, and she may choose to go ahead with disability evaluation." AR 513. While this bias does not factor into the court's deferential position here to review the evidence on the record to determine if it supports the ALJ's finding (it is not the court's role to reweigh the evidence), this is potentially indicative of a bias that a treating source may have for his long-time patient who he urges to apply for disability benefits. Such would further support the ALJ's finding.

Stientjes great weight. AR 22.[15] Dr. Stientjes found claimant could understand "mildly complex oral and written communications" and needs "some repetition" AR 618. Dr. Tedesco found claimant "maintains the cognitive abilities to work at occupations that are . . . mildly complex on a sustained basis." AR 113. Dr. Shafer writes that the record does not support that claimant is "unable to meet competitive [employment] standards." AR 145. Also, the VE testified that claimant has required some transferable skills, from her past work as a nurse's aide and medication technician, of documenting and following written directions or communications. AR 85. Given that semi-skilled work requires "some skills," the record supports that claimant is capable of and has already acquired "some [relevant] skill," namely her ability to document and follow directions/communications. 20 C.F.R. §§ 404.1568(b), 416.968(b); *see* AR 85 & 27. The regulations defining semi-skilled work emphasizes a potential for "repetitive tasks." *Id.* §§ 404.1568(b), 416.968(b). From Dr. Stientjes' opinion, claimant is both capable of and would benefit from repetition. Overall, this is substantial evidence that supports that claimant can do work that "needs some skills but does not require doing the more complex work duties." *Id.*

On a final note, as the court finds the record supports that claimant can perform semi-skilled work, thus, the court finds the RFC assessment and hypothetical question

---

[15] Initially, this court was concerned that the ALJ gave the opinion of Dr. Stientjes "great weight" (AR 22) even though, Dr. Stientjes' ultimate conclusion was "[p]rospects for return to full-time employment are poor [for claimant] despite necessary cognitive skills." AR 618. The ALJ failed to address this in her decision. Yet, Dr. Tedesco, a State-agency expert, did address this apparent inconsistency in detail in his opinion on the record. *See* AR 113 (finding that Dr. Stientjes' final statement must have referred to claimant's physical disorders); *see supra* page 13–14. But alas, in the court's deferential current position, it is sufficient that Dr. Tedesco's opinion (dated September 17, 2012) was a part of the record which the ALJ reviewed prior to the hearing (dated December 19, 2013) and prior to her decision (dated February 24, 2014). The court assumes that since there was a sufficient explanation on the record, the ALJ, regrettably, saw no need to address it in her decision.

posed by the ALJ were proper. *See Lewis*, 353 F.3d at 646 (The RFC determination "is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations."); *see also Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012) (internal quotation and citation omitted) (The hypothetical question "needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.").

**B.  Representative Brief Dated November 24, 2012 (Exhibit 25) Submitted As Supplemental Evidence on Appeal**

Here claimant presents additional arguments.  First, claimant points to an inconsistent statement in the ALJ's decision.  At step two of the sequential evaluation process, the ALJ classified claimant's osteoarthritis both as a severe impairment (causing significant limitation in claimant's capacity to perform activities) and as a nonsevere impairment (causing no functional limitations on claimant).  AR 16.  Claimant argues "[t]he inherent inconsistency of these findings substantially erodes the ALJ's findings of fact and conclusions of law."  AR 383.  The court acknowledges this clear inconsistency and finds this to be a typographical error.  The ALJ included osteoarthritis in the heading of section three: "The claimant has the following severe impairments: . . . osteoarthritis." AR 16.  The ALJ likely failed to delete "osteoarthritis" from the section beneath the heading, which lists the nonsevere impairments.  *Id.*  It is regrettable that such an error exists in the ALJ's decision.  Nonetheless, the court finds that the ALJ did in fact treat osteoarthritis as a severe impairment.  This is based on the court's review of the ALJ's decision as a whole and the hypothetical question posed by the ALJ.  The ALJ embodied claimant's osteoarthritis into the hypothetical question by finding that the claimant could only frequently (not constantly) bilaterally finger and handle, and the ALJ extensively

discussed claimant's osteoarthritic complaints when she assessed claimant's credibility. *See* AR 83 & 17–27. Also, Dr. Shafer listed claimant's osteoarthritis as a severe impairment. AR 139 (finding "severity: severe."). As did Dr. Tedesco. AR 95. The ALJ's decision remains supported by the substantial evidence on the record as a whole.

Next, claimant argues as follows: ALJ failed to follow the "slight abnormality" standard in determining claimant's heart disease and psoriasis to be nonsevere; furthermore, the medical evidence on the record supports finding these impairments severe. AR 384.[16] Claimant refers to Social Security Ruling 96-3P titled "Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe." SSR 96-3P, 1996 WL 374181 (July 2, 1996). This ruling clarifies the term "severe" as used in the sequential evaluation process laid out in 20 C.F.R. §§ 404.1520, 416.920. *Id.* The ruling states "[f]or such an individual, an impairment(s) is considered "not severe" if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner." *Id.* Social Security Rulings are policy interpretations issued by the SSA and are binding on the SSA. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 2004) (explaining that the Social Security Ruling is "as binding on the Secretary as the regulation on which it is based"). Although the ALJ did not explicitly state that she considered SSR 96-3P, the court finds that her determination—that the impairments of heart disease and psoriasis were nonsevere—is consistent with SSR 96-3P. In the *Applicable Law* section of the ALJ's decision, the standard of slight abnormalities is described in general terms. AR 14. Also, the court finds that after thorough review of

---

[16] Claimant also includes osteoarthritis. But the court already addressed this issue in the above paragraph.

the whole record, substantial evidence does support the ALJ's decision, which includes her finding of claimant's heart disease and psoriasis as nonsevere. *See* AR 132 (Dr. May on reconsideration found that claimant "ha[s] a history of heart surgery, there is no evidence of heart failure at this time. Your cardiac condition has responded well to medication and treatment . . . [t]here is no evidence of severe nerve damage or muscle wasting."); AR 98 (Dr. Weis found "[s]he is described as having some psoriatic patches and mild swelling in her hand joints. There is no evidence however of impaired function in that regard.").

In her penultimate argument, claimant alleges that the ALJ's finding that claimant can perform the full range of sedentary work is unsupported. AR 384. Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . [j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). There is an overall consensus among the State agency medical professionals that claimant can indeed perform full sedentary work as by the above cited regulation. *See* AR 97 & 102 (Dr. Weis found claimant can sit with normal breaks for about 6 hours in an 8 hour workday and stand/walk with normal breaks for about 6 hours in an 8 hour workday and claimant has good use and strength in arms and legs with no sever nerve damage or muscle wasting); AR 128 (on reconsideration, Dr. May found that despite claimant's assertion of overall worsening of her conditions, there is no evidence to support such assertion, and he affirms the initial finding by Dr. Weis); and, AR 130 (on reconsideration Dr. Shafer affirmed Dr. Weis' assessment).

Last, claimant alleges that the ALJ did not give claimant's treating source—Dr. Vernon—proper weight (namely controlling weight). AR 384. The court has already discussed above that the ALJ was reasonable in giving little weight to Dr. Vernon's

statements.  *See* Section III, C; *see also* Section VI, A (2) and note 14.  There is no need to repeat this same analysis here.

## VIII. CONCLUSION

The court sympathizes with claimant for the difficulties associated with her depression and other ailments.  Yet, the court's task is to act in a deferential capacity and to affirm the ALJ's decision if such decision is supported by substantial evidence on the record as a whole.  After a thorough review of the entire record, the court concludes that the ALJ's decision to deny claimant's application for DIB and SSI is indeed supported by such evidence.  Accordingly, the court **affirms** the decision of the ALJ.  Judgment shall be entered in favor of the Commissioner and against claimant.

**IT IS SO ORDERED** this 2nd day of September, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa